# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMIDULLAH HABIBI,<br><br>                         Petitioner,<br><br>  v.<br><br>WILLIAM BARR, Attorney General of the United States, *et al.*,<br><br>                        Respondents. | Case No. 20-cv-00618-BAS-RBB<br><br>**ORDER:**<br><br>**(1) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER [ECF No. 7];**<br><br>**AND**<br><br>**(2) DENYING AS MOOT AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER [ECF No. 10]** |

On March 24, 2020, Petitioner Hamidullah Habibi filed an Emergency Motion in the Ninth Circuit seeking his release under the All Writs Act due to the COVID-19 pandemic. (ECF No. 1-2.) On March 31, 2020, the Ninth Circuit construed the Motion as an application for a writ of habeas corpus under 28 U.S.C. § 2241 and transferred the case to the Southern District. (ECF No. 1.) Petitioner thereafter filed an Amended Petition for Habeas Corpus ("Petition") and a Motion for a Temporary Restraining Order ("Motion for a TRO" or "Motion"). (Pet., ECF No. 6; Mot., ECF No. 7.) The Government responded to both the Motion and Petition on April 10, 2020. (Resp. to Req. for TRO, ECF No. 11; Resp. in Opp'n to Am. Pet., ECF No. 12.) For the reasons stated below, the Court **DENIES** the Motion.

- 1 -

## I. BACKGROUND

Petitioner is a 23-year-old asylum seeker from Afghanistan currently detained at Otay Mesa Detention Center ("OMDC"). (Pet. ¶¶ 1–2.) Petitioner has been in the custody of the Department of Homeland Security for two years and five months. (Decl. of Harper Otawka ("Otawka Decl.") ¶ 1, ECF No. 6-4.)

Petitioner represented himself in his removal proceedings. (Otawka Decl. ¶ 2.) He applied for asylum, statutory withholding of removal, and protection under the United Nations Convention Against Torture. (*Id.*) The Immigration Judge ("IJ") denied his application for all forms of relief and ordered him removed to Afghanistan. (*Id.*) Petitioner appealed the removal decision to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on September 25, 2019. (ECF No. 6-6.)

After a custody redetermination proceeding on April 1, 2020, the IJ granted Petitioner's request for release from custody under a bond of $30,000. (ECF No. 6-7.) Petitioner's bond counsel states that the IJ did not ask Petitioner any questions during the redetermination hearing and ultimately found him a "significant flight risk," setting his bond at $30,000 "because it was very expensive for one to travel from Afghanistan to the United States[.]" (Otawka Decl. ¶ 8.) Petitioner cannot afford to pay the bond, and his counsel intends to appeal the decision. (Otawka Decl. ¶ 9.)

As such, Petitioner remains detained at OMDC during the ongoing COVID-19 pandemic, where there are now 14 confirmed cases of the virus in the facility. (Decl. of Captain Philip Farabaugh ("Farabaugh Decl.") ¶ 12, ECF Nos. 11-2, 12-2.) He is housed "in the P-Pod which is one of the 6 housing units under quarantine for positive COVID cases." (Farabaugh Decl. ¶ 12c.)

## II. STANDARD OF REVIEW

If the nonmovant has received notice of a TRO,[1] the standard for issuing a

---

[1] Petitioner filed an initial Motion for a TRO on April 6, 2020 (ECF No. 7) and an Amended Motion for a TRO on April 9, 2020, clarifying that he sought *ex parte* relief. (ECF No. 10.) *Ex parte* TROs can be appropriate "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing[,]" or where "notice to the defendant would render fruitless the further prosecution of the action." *Reno Air*

temporary restraining order is the same as that for issuing a preliminary injunction. *See Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 98, 972 (1997) (emphasis original) (quotation omitted). "[T]he burden of proof at the preliminary injunction stage tracks the burden of proof at trial." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

To obtain preliminary injunctive relief, a movant must "meet one of two variants of the same standard." *All for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017.) Under the first standard, the movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Under the second standard, the movant must show "that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits," that the "balance of hardships tips sharply in the Plaintiff's favor," and that "the other two *Winter* factors are satisfied." *Id.* (quotation omitted). The balance of equities and public interest factors merge "[w]hen the government is a party." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

---

*Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)).

   Notice was plainly not an obstacle in this case; Petitioner's counsel confirmed that he provided notice to Respondents on April 6, 2020. (Decl. of Christopher Medeiros ¶ 2, ECF No. 10-2.) Petitioner did not otherwise allege that notice to the Respondents would undermine prosecution of the action. Moreover, Respondents indicated that they would be opposing the Motion and have filed their response. (ECF No. 11.) Thus, notwithstanding Petitioner's clarification for *ex parte* relief, the Court considers the Motion in circumstances where notice has been provided to the nonmoving party.

## III. ANALYSIS

Petitioner claims that his continued detention violates his due process rights because: (1) he is exposed to "an intolerable risk of death from COVID-19"; and (2) "the IJ refus[ed] to consider his financial circumstances when setting bond" in contravention of *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). (Mem. of P. & A. in supp. of Mot. ("Mem.") at 1–6, 9, ECF No. 10-1; *see also* Pet. ¶¶ 3, 4) Petitioner argues that his continued detention under both these circumstances elevates his detention to punishment, which violates his Fifth Amendment right to due process as a civil detainee. The Government opposes, arguing that Petitioner has failed to satisfy his burden for a TRO for either claim.[2]

Having reviewed the parties' briefings, the Court finds that Petitioner has not satisfied his burden for a TRO under the Fifth Amendment ordering him released in light of the pandemic or the purportedly flawed bond determination by the IJ.

### A. Likelihood of Success on the Merits

#### 1. Exposure to COVID-19

Individuals detained pursuant to immigration violations are civil detainees. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A petitioner can demonstrate punitive conditions by showing that the challenged condition is: (1) expressly intended to punish; or (2) not rationally related to a legitimate government objective or is excessive to

---

[2] The Government also argues that "seeking release under a writ of habeas corpus is not an appropriate method for remedying confinement conditions[.]" (Resp. at 11–12.) The Court disagrees with the Government's characterization of Petitioner's claim. Petitioner is not challenging a specific condition of his confinement but instead claims that his confinement itself violates his due process rights—a direct challenge to the validity of his detention. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004). Other courts in this Circuit have considered similar claims brought under § 2241. *See Bent v. Barr*, Case No. 19-CV-06123-DMR, 2020 WL 1812850 (N.D. Cal. April 9, 2020); *Castillo v. Barr*, Case No. CV 20-00605-TJJH (AFMx), 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020). Moreover, the Ninth Circuit itself has *sua sponte* ordered the release of an immigrant detainee "in light of the rapidly escalating public health crisis[.]" *Xochihua-Jaimes v. Barr*, Case No. 18-cv-71460, 2020 WL 1429877, at *1 (9th Cir. Mar. 24, 2020). Thus, the Court does not find persuasive the Government's position that the Petition is an improper vehicle for Petitioner's claims.

that purpose. *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74 (2015); *see also Jones v. Blanas*, 393 F.3d 918, 933–34 (9th Cir. 2004) (holding that conditions are punitive where they are "employed to achieve objectives that could be accomplished in so many alternative and less harsh methods").

Further, due process imposes a duty on the State "to assume some responsibility for [the] safety and general well-being" of persons it takes into its custody. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).[3] The state can consequently be held liable for a due process violation where a government official affirmatively places individuals, with deliberate indifference to their health or safety, in a position of known danger "which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (citing *DeShaney*, 489 U.S. at 201). This requires a person in custody to show that government officials acted in an objectively unreasonable manner to place him or her "'at substantial risk of suffering serious harm.'" *See Smith v. Wash.*, 781 F. App'x. 595, 588 (9th Cir. 2019) (citing *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).

Petitioner does not argue that the Government expressly intended to punish him by keeping him detained. Instead, Petitioner disputes that his detention is reasonably related to any legitimate governmental goal and contends that "detention is not the only tool the Respondents can use" to "carry out his removal order should it become final, or to ensure he appears for any post-remand proceedings in immigration court." (Mem. at 11.) He also claims that his continued detention transgresses constitutional requirements imposed on the Government to ensure his reasonable safety. (*Id.* (citing *DeShaney*).)

a. *Reasonable Relation to Legitimate Government Purpose*

The Supreme Court has recognized the detention of individuals pending their removal proceedings as rationally related to the legitimate governmental interest of

---

[3] Due process claims brought under the Fifth and Fourteenth Amendments are analyzed under the same standard. *See Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976) ("[T]he Fourteenth Amendment imposes no more stringent requirements upon state officials than does the Fifth upon their federal counterparts.").

ensuring their appearance for their deportation proceedings and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003). The Ninth Circuit has recently held that when a detainee has been determined "to be neither dangerous nor so great a flight risk as to require detention without bond," IJs should consider alternative release conditions and a detainee's financial circumstances to ensure the conditions of release are reasonably related to these governmental interests. *Hernandez*, 872 F.3d at 990–91.

Petitioner's claim that his continued detention is not incident to a legitimate governmental interest is explicitly premised on a challenge to the IJ's determination that Petitioner poses a significant flight risk. (Mot. at 11–12 ("[C]ontrary to what the IJ found, nothing about Mr. Habibi suggests that he is a flight risk" because his counsel is located in San Diego and he can live with a family friend if released). Thus, *Hernandez* notwithstanding, the Court has no jurisdiction to review the IJ's discretionary determination about his flight risk to find that his continued detention serves no legitimate purpose. Without having stated any basis for waiving administrative remedies as to this question, Petitioner cannot attempt characterize an IJ's discretionary determination as a constitutional injury to make an end-run around the administrative process and seek review in this Court. *See Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001) ("[A] petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb."); *see also Hachicho v. McAleenan*, Case No. EDCV 19-820-VAP (KK), 2019 WL 5483414, at *7 (C.D. Cal. Oct. 18, 2019), *appeal dismissed sub nom.* No. 19-56493, 2020 WL 1479930 (9th Cir. Feb. 11, 2020). The Court therefore does not find merit to Petitioner's claim that his detention is not reasonably related to a legitimate governmental objective.

          b.    *Providing for the Reasonable Safety of Detainees*

As stated above, the State has an affirmative constitutional duty to provide a degree of care to those in its custody, including "provid[ing] for [a detainee's] basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety[.]" *DeShaney*,

489 U.S. at 200. In this vein, the Supreme Court has held that prison officials cannot "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993).[4]

Relying on *DeShaney* and *Helling*, Petitioner contends that the Government's decision to detain him at OMDC "when an outbreak is already underway there constitutes punishment[.]" (Mot. at 11.) However, Petitioner does not allege facts to demonstrate a likelihood of success on the claim that the Government has failed to provide for his reasonable safety by ignoring the risk posed by COVID-19.

First, Petitioner has not identified (and the Government is not aware of) any medical conditions that put him at higher risk of severe illness or death as a result of contracting COVID-19. (Farabaugh Decl. ¶ 13.) Other courts have found that the Government has acted with deliberate indifference to the health and safety of *vulnerable* individuals by "holding them in a congregate, communal-living setting where social distancing is an oxymoron." *Jones v. Wolf*, Case No. 20-cv-361, 2020 WL 1643857, at *12 (W.D.N.Y. Apr. 2, 2020); *see also Hernandez v. Decker*, Case No. 20-CV-1589 (JPO), 2020 WL 1547459, at *2 (S.D.N.Y. Mar. 31, 2020) (finding that detainee was likely to succeed on his deliberate indifference claim because the respondents had "not taken any action to address the particular risks that COVID-19 poses to high-risk individuals like [the p]etitioner"); *Basank v. Decker*, Case No. 20 Civ. 2518, 2020 WL 1481502 (S.D.N.Y. Mar. 26, 2020) (finding detainees likely to succeed on due process claims where petitioners suffer from underlying diseases). This is consistent with the findings of the Centers for Disease Control and Prevention ("CDC"), which has identified

---

[4] The Supreme Court decided *Helling* under the Eighth Amendment. The Eighth Amendment confers prisoners with the right to be free from cruel and unusual punishment, whereas pretrial detainees have the right to be free from punishment altogether. *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Thus, "pretrial detainees' due process rights are at least as great as the eighth amendment protections available to convicted prisoners." *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986); *see also Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003) ("[W]e have recognized that, even though the pretrial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a *minimum standard of care* for determining their rights[.]").

those at highest risk of suffering from severe and possibly fatal forms of the disease to include the elderly (people ages 65 and older) and people with certain conditions, including chronic lung disease or moderate to severe asthma; serious heart conditions; severe obesity; diabetes; chronic kidney disease; liver disease; and those who are immunocompromised from conditions such as chemotherapy, smoking, transplants, HIV/AIDs, or the use of immune weakening medications. "Groups at Higher Risk for Severe Illness," CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (April 2, 2020). Petitioner does not allege that he suffers from any of these conditions—or any underlying medical condition at all—that makes him more susceptible to severe illness or death from COVID-19.

Second, Petitioner has not addressed the adequacy of the measures that the Government has taken to abate the spread of the virus and provide for detainees' reasonable safety at OMDC. (*See* Farabaugh Decl. ¶¶ 8–9, 15–19 (detainees, vendors, and staff are screened for fever, illness, and contact with positive cases; detainees are tested and isolated if they show symptoms; the facility has increased in disinfectant spray, hand sanitizer, soap, and cleaning of the housing units; all social visitations have been suspended and counsel visitations are non-contact).) The facility has also implemented "cohorting"—"an infection-prevention strategy which involves housing detainees together who were exposed to a person with an infectious organism but are asymptomatic." (*Id.* ¶ 10.) These detainees are removed from general population and placed in "cohorts with restricted movement" for 14 days and monitored daily for symptoms. (*Id.* ¶ 10.) Individuals who show symptoms are referred to a medical provider for evaluation. (*Id.*) The medical staff have "identified housing units for the quarantine of patients who are suspected of or test positive for COVID-19 infection." (*Id.* ¶ 20.) Petitioner is in one such cohort, P-Pod, where the entire housing unit was placed under quarantine for positive COVID cases.[5] (*Id.* ¶ 12c.)

---

[5] Petitioner does not specifically allege that OMDC's decision to quarantine him along with his housing unit, as part of the cohorting process, is punitive or places him at substantial risk of suffering serious harm in violation of his due process rights.

Because the Motion lacks allegations about any specific substantial risk to Petitioner due to any purported indifference by OMDC officials, the Court cannot conclude that the Government abandoned its constitutional duty and exposed Petitioner to a risk "that is sure or very likely to cause serious illness and needless suffering" in the future. *Helling*, 509 U.S. at 33. As such, the Court does not find that Petitioner's claim that his continued confinement during the pandemic is likely to sufficiently state a claim for a violation of due process.

### 2. Bond Determination

The Court also finds that Petitioner's failure to exhaust administrative remedies with regard to his bond defeats any likelihood of success on his second claim in his Motion.

Generally, a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal[.]" *RojasGarcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003); *see also Laing v. Ashcroft*, 370 F.3d 994, 999 (9th Cir. 2004) ("To allow a party to hopscotch over judicial review requirements by simply waiting for them to expire would eviscerate the exhaustion doctrine."). However, a petitioner can be excepted from the exhaustion requirement " where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981).

Petitioner alleges that exhaustion should be waived for his challenge to his bond determination because irreparable injury will result if he is required to comply with it. Specifically, he claims that a bond appeal before the BIA would take four to six months—time, he alleges, he simply does not have in light of the pandemic. (Mem. at 10; Otawka Decl. ¶ 9; Decl. of Christopher Medeiros ¶ 5, ECF No. 6-3.) However, as stated in Section III.B., *infra*, the Court does not find that Petitioner has stated an irreparable injury in this case. Without a proper basis for waiver, Petitioner cannot construe a challenge to

his bond determination as a constitutional inquiry to sidestep the congressionally-imposed limitations on district court jurisdiction. *See Torres-Aguilar*, 246 F.3d at 1271.[6]

### B. Irreparable Injury

To recover preliminary relief, a moving party must also demonstrate that irreparable injury is likely in the absence of an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed. 1995) (applicant must demonstrate that in the absence of a preliminary injunction, "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered").

In cases similar to this one, other courts have found irreparable harm where the moving parties have suffered from underlying conditions. *Cf. Ortuño v. Jennings*, Case. No. 20-cv-2064-MMC, Dkt. No. 38 (N.D. Cal. Apr. 8, 2020) (finding that the petitioners, "as persons at high risk of severe illness or death if infected with COVID-19, are likely to incur irreparable injury in the absence of any relief from their present conditions of confinement"); *Bent*, 2020 WL 1812850, at *6 (holding that because the petitioner had at least two high-risk conditions and therefore faced a heightened risk because of COVID-19, he had shown a likelihood of irreparable injury to his health and safety); *see also Coronel v. Decker*, Case No. 20-cv-4272 (AJN), 2020 WL 1487274, at *3 (S.D.N.Y. Mar. 27, 2020) ("Due to their serious underlying medical conditions, all Petitioners face a risk of severe, irreparable harm if they contract COVID-19.").

Here, by contrast, Petitioner is a 23-year-old with no stated preexisting or underlying medical conditions that make him high-risk due to COVID-19. Petitioner's claim that his mere presence in OMDC, absent any underlying conditions, is therefore insufficient to state a *likelihood* that he will suffer severe illness or any other irreparable harm as a result of his continued detention. *See Winter*, 555 U.S. at 22 (holding that a moving party must make a clear showing beyond the mere possibility of irreparable harm to warrant extraordinary relief).

---

[6] *See also* Section III.A.1.a., *supra*.

This Court agrees with the reasoning in Judge Callahan's recent dissent in *Lopez-Marroquin v. Barr*, No. 18-72922 (9th Cir. Apr. 9, 2020), wherein she cautions against granting relief under the All Writs Act to the "generic detainee," who "claims neither to have contracted the virus nor to suffer from any underlying health issues placing him at greater risk than anyone else in Government custody." As Judge Callahan inquires: "If he's entitled to relief, then who isn't?" Here, granting the requested extraordinary relief to one in Petitioner's generic circumstances raises this same question. Thus, based on Petitioner's relative level of health and the Government's precautionary measures, the Court cannot conclude that Petitioner has shown a likelihood of irreparable harm absent the requested relief. *See Dawson v. Asher*, Case No. C20-0409-JLR-MAT, 2020 WL 1704324, at *12 (W.D. Wash. Apr. 8, 2020).

### C. Balance of Equities/Public Interest

When the Government is the opposing party, the final two factors in the TRO analysis merge. *Nken*, 556 U.S. at 435. Because Petitioner has not established a likelihood of success on the merits of his due process claims, there is no public interest related to the prevention of continuing constitutional injuries. *Cf. Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[T]he deprivation of constitutional rights unquestionably constitutes irreparable injury . . . .").

Moreover, OMDC also appears to be taking great pains to protect the public during this unprecedented public health crisis. (*See* Section III.A.1.b., *supra*.) Due directly to the facility's protocols, Petitioner is now in quarantine due to his exposure to an individual who tested positive. (Farabaugh Decl. ¶ 12c.) Petitioner's release would needlessly put the public at risk by allowing him to potentially expose others outside the facility to the virus. Given his exposure, and absent any established likelihood of constitutional injury, the Court cannot find that granting his request for release would be in the public interest.

## IV. CONCLUSION AND ORDER

Petitioner has not made a clear showing that he is entitled to the extraordinary relief requested in his Motion. Accordingly, the Court **DENIES** Petitioner's Motion for a TRO (ECF No. 7) and **DENIES AS MOOT** Petitioner's Amended Motion for a TRO (ECF No. 10).

**IT IS SO ORDERED.**

DATED: April 14, 2020

Hon. Cynthia Bashant
United States District Judge