# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMIDULLAH HABIBI,<br><br>　　　　　　　　　Petitioner,<br><br>　v.<br><br>WILLIAM BARR, Attorney General of the United States, *et al.*,<br><br>　　　　　　　　　Respondents. | Case No. 20-cv-00618-BAS-RBB<br><br>**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 12]** |

On March 24, 2020, Petitioner Hamidullah Habibi filed an Emergency Motion in the Ninth Circuit seeking his release under the All Writs Act due to the COVID-19 pandemic. (ECF No. 1-2.) On March 31, 2020, the Ninth Circuit construed the Motion as an application for a writ of habeas corpus under 28 U.S.C. § 2241 and transferred the case to the United States District Court for the Southern District of California. (ECF No. 1.) Petitioner thereafter filed an Amended Petition for Habeas Corpus ("Petition").[1] (ECF No. 6.) Respondents filed a Response in Opposition seeking to dismiss the Petition, which the Court now construes as a Motion to Dismiss ("Motion"). (ECF No. 12.) The Court finds the issues raised suitable for determination on the papers submitted and without oral argument. *See* CivLR 7.1(d)(1). For the reasons stated below, the Court **GRANTS** Respondents' Motion and **DISMISSES** the Petition.

---

[1] Petitioner concurrently filed a Motion for a Temporary Restraining Order ("TRO") (ECF No. 7), which was denied by this Court on April 14, 2020. (Order Denying Mot. for TRO, ECF No. 13.)

## I. BACKGROUND

Petitioner is a 23-year-old asylum seeker from Afghanistan currently detained at Otay Mesa Detention Center ("OMDC"). (Pet. ¶¶ 1–2.) Petitioner has been in the custody of the Department of Homeland Security for two years and five months. (Decl. of Harper Otawka ("Otawka Decl.") ¶ 1, Ex. B to Pet., ECF No. 6-4.)

Petitioner represented himself in his removal proceedings. (Otawka Decl. ¶ 2.) He applied for asylum, statutory withholding of removal, and protection under the United Nations Convention Against Torture. (*Id.*) The Immigration Judge ("IJ") denied his application for all forms of relief and ordered him removed to Afghanistan. (*Id.*) Petitioner appealed the removal decision to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on September 25, 2019. (Dec. of the BIA, Ex. D to Pet., ECF No. 6-6.) Petitioner filed a Petition for Review of this decision before the Ninth Circuit, which remains pending. (Pet. ¶ 28; Dkt. for *Hamidullah Habibi v. William Barr*, Case No. 19-72683 (9th Cir. October 23, 2019), ECF No. 1-5.)

After a custody redetermination proceeding on April 1, 2020, the IJ granted Petitioner's request for release from custody on a $30,000 bond after finding him a "significant flight risk." (Order of the IJ, Ex. E to Pet., ECF No. 6-7.) Petitioner's bond counsel states that the IJ did not ask Petitioner any questions during the redetermination hearing and ultimately set bond at $30,000 "because it was very expensive for one to travel from Afghanistan to the United States[.]" (Otawka Decl. ¶ 8.)

Petitioner cannot afford to pay the bond, and on April 13, 2020, his bond counsel filed a Notice of Appeal with the BIA challenging the IJ's bond determination for failing to consider Petitioner's financial circumstances when setting the bond amount. (Reply at 1, ECF No. 14; Decl. of Harper Otawka ("Otawka Reply Decl.") ¶ 2, Ex. B to Reply, ECF No. 14-3.) Petitioner's bond counsel is concurrently working on a motion to expedite Petitioner's bond appeal, citing irreparable harm due to the COVID-19 outbreak at OMDC. (Otawka Reply Decl. ¶ 2.)

As such, Petitioner remains detained at OMDC during the ongoing COVID-19 pandemic, where, at the time of this Order, there are 98 confirmed cases at the facility. *See* "Confirmed Cases: ICE Guidance on COVID-19," ice.gov/coronavirus (last updated April 25, 2020).[2] He is housed "in the P-Pod which," at the time Respondents' Motion was filed, "is one of the 6 housing units under quarantine for positive COVID cases." (Farabaugh Decl. ¶ 12c.)

Based on these circumstances, Petitioner states two grounds for habeas relief. First, he claims that his continued detention at OMDC during the COVID-19 outbreak threatens his life in violation of his due process rights. (Pet. ¶ 3.) Second, Petitioner contends that the bond set by the IJ is both arbitrary and punitive in violation of his due process rights because the IJ failed to consider his financial circumstances when setting bond in contravention of *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). (Pet. ¶ 4.) Respondents argue that Petitioner's challenge to his bond determination is deficient for failing to exhaust administrative remedies and that both due process claims are without merit.[3] (Mot. at 6–8, 10–14.)

## II. DISCUSSION

As explained below, the Court finds that Petitioner has not provided sufficient factual basis to waive the exhaustion requirement for his bond claim[4] or to support his due process claim predicated on his continued detention at OMDC.

---

[2] At the time of Respondents' filing of their Motion, there were only 14 known cases of COVID-19 at OMDC. (*See* Mot. at 5; Decl. of Captain Philip Farabaugh ("Farabaugh Decl.") ¶ 12, Ex. A to Mot., ECF No. 12-2.)

[3] Respondents also claim that the Petition fails to state a cognizable habeas claim because "seeking release under a writ of habeas corpus is not an appropriate method for remedying confinement conditions[.]" (Mot. at 11–12.) The Court rejected this argument in its previous Order and incorporates by reference the same reasoning here. (*See* Order Denying Mot. for TRO at 4 n.2.)

[4] Petitioner states that his claim that his continued detention violates his due process rights is not subject to the exhaustion requirement because "there is no administrative framework for claims that one faces life-threatening conditions of detention[,]" which Respondents do not dispute. (Pet. ¶ 37.) The Court agrees with Petitioner and addresses exhaustion only as to Petitioner's bond claim. *See Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005) (finding jurisdiction over petitioner's retroactivity challenge to an immigration law because it "implicate[d] legitimate due process considerations that need not be exhausted . . . because the BIA cannot give relief on such claims.").

### A. Exhaustion of Bond Claim

#### 1. Habeas Exhaustion Requirement

Habeas corpus relief is available to any person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus is a legal mechanism for individuals to raise statutory and constitutional challenges to the authority of the Attorney General to mandate their detention pending the outcome of their immigration cases. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

The Ninth Circuit requires, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *see also Sun v. Ashcroft*, 370 F.3d 932, 938 n.7 (9th Cir. 2004). Generally, if a petitioner fails to exhaust these remedies before seeking habeas relief in district court, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

"Th[e] exhaustion requirement is subject to waiver in [section] 2241 cases because it is not a jurisdictional prerequisite." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "[W]here exhaustion of administrative remedies is not jurisdictional," as here, "the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55 (1995). Courts may require prudential exhaustion if:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Hernandez*, 872 F.3d at 988 (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

However, even if these factors weigh in favor of prudential exhaustion, exhaustion can be waived if the court finds that "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)); *see also Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018) (holding that petitioner challenging bond decision "must show that at least one of the *Laing* factors applies in order to excuse exhaustion").

### 2. Exhaustion in Immigration Cases

In the immigration administrative scheme, immigrant detainees "must first appeal any purported errors by the IJ to the BIA, the body to which consistent application of immigration law is primarily entrusted." *Arsdi v. Holder*, 659 F.3d 925, 928 (9th Cir. 2011). IJs have authority to review custody and bond determinations initially made by the Department of Homeland Security upon request for a bond redetermination by an undocumented individual in custody. 8 C.F.R. §§ 1003.19(a), (b); 1236.1; *see Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) (finding that detainees are "entitled to release on bond unless the government establishes that he is a flight risk or will be a danger to the community") (internal quotations omitted). If a detainee wishes to challenge an IJ's bond determination, the detainee "may file an administrative appeal so that 'the necessity of detention can be reviewed by . . . the BIA.'" *Leonardo*, 646 F.3d at 1160 (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008)).

If the BIA denies relief, detainees then "may file a petition for habeas corpus in the district court," and if the decision is unfavorable, "[t]hey may then appeal to" the Court of Appeals. *Id.* (citing *Singh v. Holder*, 638 F.3d 1196, 1200–03 (9th Cir. 2011)). Thus, in habeas cases where a detainee seeks review of a bond determination, courts generally

require that the detainee exhaust administrative remedies before the BIA "before asking the federal district court to review the IJ's decision." *Id.*

### 3. Petitioner's Waiver Argument

Here, because Petitioner's appeal of his bond is pending before the BIA (Otawka Reply Decl. ¶ 2), administrative remedies have not yet been exhausted, which Petitioner concedes. (Pet. ¶ 38.) Petitioner argues he should not be required to exhaust administrative remedies because he is at risk of suffering irreparable harm if he remains detained during the pandemic and should therefore not be required to await the BIA's adjudication of his bond appeal. (*Id.*; Otawka Decl. ¶ 9 (attesting that bond appeals typically take the BIA four to six months to resolve).) However, given the factors weighing in favor of prudential exhaustion and Petitioner's factually scant argument to support the irreparable harm exception, the Court finds that Petitioner's failure to exhaust administrative remedies defeats his bond claim.

#### (a) *Puga* factors

The *Puga* factors weigh in favor of prudential exhaustion as to Petitioner's challenge to the IJ's bond determination. Petitioner's counsel only recently appealed the bond redetermination decision to the BIA on April 13, 2020. Thus, Petitioner's argument is "essentially that 'any delay in receiving a bond hearing results in a loss of liberty that requires' this court to act because the 'administratively-established procedures may result in [undue] delay.'" *Francisco Cortez v. Nielsen*, No. 19-CV-00754-PJH, 2019 WL 1508458, at *3 (N.D. Cal. Apr. 5, 2019) (quoting *Resendiz v. Holder*, No. C 12-04850 WHA, 2012 WL 5451162, at *5 (N.D. Cal. Nov. 7, 2012)). As noted by the Northern District, "[t]hat is an argument common to all aliens seeking review of their custody or bond determinations." *Id.*

Although the Court recognizes that the current pandemic heightens the urgency created by the delay, this does not mean that any delay before the BIA, on any question about the IJ's determination, warrants waiver. If that were the case, every detainee's bond appeal pending before the BIA during this time would be waived from the

exhaustion requirement, regardless of the time of appeal. This would undermine entirely a primary principle of exhaustion—"to allow the agency to correct its own mistakes and preclude the need for judicial review." *Puga*, 488 F.3d at 815; *see also Sola v. Holder*, 720 F.3d 1134, 1136 (9th Cir. 2013) (holding that BIA could have addressed due process argument, which "would have preserved the due process claim for appeal to this court without short-circuiting the agency's 'opportunity to correct its own errors'") (quoting *Arsdi*, 659 F.3d at 928).

Further, the thrust of Petitioner's challenge to his bond determination appears to be that the IJ "erred in presuming that because Mr. Habibi was able to travel from Afghanistan to the United States to seek asylum, that he would now have the financial capability to pay a bond of $30,000" and by "speculating that Mr. Habibi must be awash in money because he was able to flee from Afghanistan to the United States[.]" (Otawka Reply Decl. ¶ 2; Pet. ¶ 45.) Based on this modicum of information provided about the bond hearing, it appears the IJ had, in fact, considered Petitioner's financial circumstances. Although Petitioner raises fair questions regarding the validity of the IJ's factual conclusions about his ability to pay, this inquiry is well within the BIA's expertise to review and remedy. *See Avtar Singh v. Murray*, No. 1:17-CV-00739-MJS (HC), 2017 WL 6209384, at *4 (E.D. Cal. Dec. 8, 2017) (requiring exhaustion where appeal of bond determination, in which petitioner argues that IJ "erred in denying the request for bond based upon its application of the facts[,]" was within the expertise of the BIA); *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) ("[T]he BIA is the subject-matter expert in immigration bond decisions and has the authority to review appeals from bond determinations by IJs."). Relaxation of this requirement would encourage bypassing the administrative scheme in place by filing a habeas petition before or concurrently with an appeal to the BIA. *See Avtar Singh*, 2017 WL 6209384, at *6 (finding that court intervention "would encourage others to deliberately bypass the administrative system in place—i.e., the immigration appeals

system—to address erroneous decisions entered by first level immigration judges"). Thus, prudential exhaustion is appropriate in this case.

                (b)    *Irreparable Harm*

The Court also does not find that Petitioner has established an exception to exhaustion by showing that he will suffer irreparable harm if the requirement is not waived. As noted in the Court's previous order, Petitioner is "a 23-year-old with no stated preexisting or underlying medical conditions." (Order Denying Mot. for TRO at 10.) Thus, his claims of irreparable harm do not rise to the level of other petitioners whose claims have been found to constitute irreparable harm. (*Id.* (citing cases).) The Court therefore again finds no merit to Petitioner's argument that his risk of further exposure at OMDC will cause him irreparable harm "regardless of his quarantine status." (Reply at 5.)[5]

The Court also notes that Petitioner's custody redetermination hearing, resulting in a $30,000 bond, was held on April 1, 2020 pursuant to 8 C.F.R. § 1236. (*See* Order of the IJ.) Thus, this is not a case in which Petitioner alleges that he has been held for months without a constitutionally-mandated bond hearing. *C.f. Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019) (noting that "the vast majority of cases that have waived exhaustion based on irreparable injury when an individual has been detained *for months without a bond hearing*, and where several additional months may pass before the BIA renders a decision on a pending appeal") (emphasis added); *De Paz Sales v. Barr*, No. 19-CV-04148-KAW, 2019 WL 4751894, at *4 (N.D. Cal. Sept. 30, 2019) (finding irreparable harm excusing exhaustion where petitioner was detained for over a year

---

[5] Petitioner also raises, for the first time in his Reply, that his continued quarantine in a "cohort" places him at a heightened risk of suffering irreparable harm, because it "would seem only to exacerbate the factors—such as the impossibility of social distancing—that make detention centers such as OMDC a 'tinderbox' for COVID-19." (Reply at 4). Given that Petitioner was housed in a quarantined cohort as of April 9, 2020 (*see* Farabaugh Decl. ¶ 12a–c), the 14-day incubation period would have ended—assuming no new positive cases—on April 23, 2020 at the latest. The Court does not know whether Petitioner's housing pod remains cohorted at this time. And without an otherwise sufficient showing from Petitioner that "irreparable injury *will* result" from his detention, *see Laing*, 370 F.3d at 1000 (emphasis added), Petitioner's undeveloped quarantine "cohort" argument does not justify excusing the exhaustion requirement.

without a bond hearing); *Villalta v. Sessions*, No. 17-CV-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017) (finding irreparable harm where petitioner had "already been unlawfully deprived of a bond hearing for at least two months"). Further, Petitioner filed a Notice of Appeal to the BIA on April 13, 2020, and therefore cannot establish, at this point, that he has waited an inordinate amount of time for the BIA to act. *C.f. Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1677332, at *3 (N.D. Cal. Apr. 6, 2020) (finding waiver where "the BIA proceeding has already exceeded both parties' estimation of when a decision could be expected, and that there is nothing before the court that indicates a decision will be shortly forthcoming").

As such, the Court finds no valid basis for waiver of exhaustion on the facts presented.

### B. Continued Detention as a Due Process Violation

The Court turns to Petitioner's second claim that his continued detention at OMDC violates due process because it constitutes punishment and endangers his life.

As stated previously, Petitioner can demonstrate punitive conditions by showing that the challenged condition is: (1) expressly intended to punish; or (2) not rationally related to a legitimate government objective or was excessive to that purpose. *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74 (2015). In addition, the government has "some responsibility for [the] safety and general well-being" of persons it takes into its custody. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). If the government affirmatively acts in an objectively unreasonable manner to place a detainee "'at substantial risk of suffering serious harm,'" it is said to have acted with "deliberate indifference" and can be held liable for constitutional violations. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006); *see also Smith v, Wash.*, 781 F. App'x 595, 588 (9th Cir. 2019).

In his Reply brief, Petitioner cites numerous articles post-dating the filing of his initial Petition that he alleges contradict Respondents' representations about the adequacy of its measures to abate the spread of the virus and provide for detainees' reasonable

safety at OMDC. (Reply at 3–4.) These citations highlight numerous problems at OMDC, including conditioning mask distribution on the signing of liability waivers, the failure to distribute replacement masks resulting in a hunger strike, and statements by participants that detainees are not being tested and OMDC staff are not using masks or gloves. (*Id.* at 2–3.)

The Court recognizes that Petitioner's citations to external sources could contain more recent information that accurately reflects the rapidly-changing circumstances at OMDC. However, the Court cannot take judicial notice of the facts in the articles cited by Petitioner because they are not generally known and are not capable of accurate and ready determination by resort to indisputable sources. *See* Fed. R. Evid. 201(b); *see Van Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) (courts may take judicial notice of news articles as evidence of "what was in the public realm at the time, not whether the contents of those articles were in fact true"), *cert. denied*, 131 S.Ct. 3055 (2011); *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1024 (S.D. Cal. 2006), *aff'd in part*, 393 F. App'x 513 (9th Cir. 2010) (finding that declarations from other inmates, various correspondence, newspaper articles, and information from an internet website did not "fall into the limited category of documents that can be judicially noticed under Rule 201" for conditions of confinement claim).

Further, because the facts alleged in these articles are being offered for the truth of the matter asserted, they contain hearsay and are not admissible pieces of evidence. *See* Fed. R. Evid. 801(c); *AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1070 (C.D. Cal. 2015) ("It is axiomatic to state that newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted[.]") (citation and internal quotations omitted), *aff'd sub nom.*, 696 F. App'x 293 (9th Cir. 2017); *Green v. Baca*, 226 F.R.D. 624, 637–38 (C.D. Cal. 2005) ("Even when the actual statements quoted in a newspaper article constitute nonhearsay, or fall within a hearsay exception, their repetition in the newspaper creates a hearsay problem."); *see also Eisenstadt v. Allen*, 113 F.3d 1240 (9th Cir. 1997) (holding that newspaper articles do not

fall under residual exception to hearsay absent extraordinary circumstances that provide sufficient guarantees of trustworthiness).

Similarly, the Court cannot take into consideration the declaration submitted in another case that Petitioner contends undermines Respondents' representations about the precautionary measures taken by OMDC. (*See Sagastume v. Archambeault*, Case No. 3:20-cv-00658-LAB-MSB (C.D. Cal. Apr. 3, 2020), Decl. of Anne M. Hysell, ECF No. 26-1.) "As a general rule, a court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983); *see also Townes v. Paule*, 407 F. Supp. 2d 1210, 1217 n.5 (S.D. Cal. 2005) (citation omitted) ("'Facts in the judicial record that are subject to dispute, such as allegations in affidavits, declarations, and probation reports, are not the proper subjects of judicial notice even though they are in a court record.'") (quoting B. Jefferson, California Evidence Benchbook (3d ed. 2003 update), § 47.10).

While the Court acknowledges that many other lawsuits have been filed raising questions about the facility's response to the COVID-19 outbreak, it cannot take as true the facts alleged in documents supporting the claims asserted in those cases. Thus, the Court cannot consider Petitioner's proposed evidence about the deficiencies at OMDC to assess Petitioner's risk of harm in these circumstances. Notably, in addition to the myriad of aforementioned evidentiary issues, Petitioner does not claim that any of the circumstances reported in these articles and declarations apply to him: for example, that he is being denied a mask, that staff he comes in contact with are not using masks or gloves, or that he is being denied a test.

Without having marshaled evidence of Respondents' inadequate response to the outbreak that is properly before the Court, Petitioner's argument is the same as that made in his Motion for a TRO. Because Petitioner's arguments echo those made previously, they suffer from the same deficiencies. (*See* Order Denying Mot. for TRO at 7–9.)

Accordingly, the Court once again finds that Petitioner has not sufficiently shown that Respondents' measures were objectively unreasonable such that Petitioner has been placed at a substantial risk of suffering serious harm, such that his continued detention violates his due process rights. (*See* Order Denying Mot. for TRO at 7–9.)

## III. CONCLUSION AND ORDER

For the reasons stated in this Order, Petitioner's grounds for his § 2241 petition fail. Accordingly, the Court **GRANTS** Respondents' Motion and **DISMISSES WITHOUT PREJUDICE** the Petition. Petitioner may renew his request for relief upon learning any additional information about the circumstances at OMDC and marshaling additional, admissible evidence to adequately support his arguments.

**IT IS SO ORDERED.**

**DATED: May 1, 2020**

Hon. Cynthia Bashant
United States District Judge